May it please the Court, Pratik Shah for the GEICO appellants. While the District Court correctly determined that GEICO fraud investigators engage in work related to GEICO's general business operations and exercise independent judgment and discretion, it erred in finding that such exercise did not pertain to matters of significance. Just like the insurance fraud investigators in the Sixth Circuit's decision in Foster, which post-states the District Court's decision below, GEICO's investigators are tasked with conducting investigations, including deposition-like examinations, and then making and reporting quote findings regarding the suspected insurance fraud. They also obtain withdrawals of claims in the field and can unilaterally refer fraudulent claims to GEICO underwriters or to law enforcement. None of that is disputed in the least. To the contrary, plaintiffs' own reports and testimony, which are replete with conclusions stating whether fraud was indicated or not based on their investigations, establish those facts beyond any dispute. Because such fraud determinations implicate matters of significance, the District Court erred not only in granting summary judgment to plaintiffs, but also in denying summary judgment to GEICO. Now, plaintiffs respond with principally two arguments on this particular point, the matter of significance point. One of those is legal and one is primarily factual. The legal point is this. They rely heavily on the fact that GEICO investigators do not make the ultimate decision whether or not to pay a claim. That is undisputed. We concede that. But the same is exactly true for the fraud investigators in Foster. They did not make any such decisions. And DOL Regulation 541.202C makes clear that an employee need not be the final arbiter of any decision. There can be no genuine dispute, however, that GEICO's investigators, their finding of fraud substantially informs, if not controls, the ultimate disposition of a claim. Now, the second point they make is primarily a factual one. They try to distinguish Foster on the ground, and I think this is really critical, Your Honors. They say, unlike the nationwide fraud investigators, GEICO fraud investigators do not, quote, resolve indicators of fraud. There's two things you won't find in their brief when they make that point, and primarily made on page 31 of their brief. One, there is absolutely no record citation to the summary judgment record when they say, when they make the conclusive reassertion that GEICO investigators don't resolve indicators of fraud. Two, you will find no criticism of the Sixth Circuit's decision that if, in fact, fraud investigators do resolve indicators of fraud, that they do exercise discretion with respect to matters of significance. On this record, Your Honor, there can be no genuine dispute that GEICO fraud investigators resolve indicators of fraud. That is the whole point of their job, and you don't have to look any further than plaintiff's own evidence, their own reports, their own testimony. It's set forth on pages 14 and 15 of our opening brief, the blue brief, and let me just read you what their own reports say after doing these fraud investigations. Fraud indicators are present. This is a caused accident. No fraud indicators are present. That's on JSA Joint Sealed Appendix 46. No fraud indicators are present associated with this claim. The fraud was found because the billed supplies were not delivered, JSA 40. This injury claim is spurious. This was not a staged accident ring, JSA 99. Plaintiff's own testimony, only thing I can put down, I found fraud or I didn't find fraud. When you have report after report in the record and their own testimony saying that they found fraud indicators or not, I don't see how you can say there's any colorable dispute that they're not resolving fraud indicators. It is not enough to defeat summary judgment to simply say, let alone get summary judgment on your behalf, but you can't defeat summary judgment by simply saying, no, they don't. You have to point to a basis in the record from which a reasonable fact finder could conclude otherwise. They have not pointed to any basis in the record to conclude that a reasonable fact finder conclude that GEICO fraud investigators do not, in fact, resolve indicators of fraud. The only thing they can point to, and they don't even cite to this when they're taking on Foster, the closest they could come to is some manuals which say GEICO investigators should not include opinions in their report. We don't dispute that. Of course, they shouldn't include unsubstantiated opinions as they acknowledge on page 11 of their brief, and as the district court's opinion acknowledges on page 6 of its order, there's no question that if their recommendations and conclusions are substantiated, they of course can offer them. And we see that borne out in report after report in the record. Fraud indicators are present. No fraud indicators are present. This is an accident, fraudulent accident ring. This is not a fraudulent accident ring. I just don't see how you can look at this record and say there's any colorable dispute on that. Now, once you have the predicate that GEICO fraud investigators do, in fact, resolve indicators of fraud, then from there, there is no daylight between this case and the Sixth Circuit's decision in Foster, and you will search in vain in their briefs of any criticism of the Foster decision with respect to that point. That is, fraud investigators who resolve indicators of fraud are exercising judgment and independence with respect to matters of significance, nor could there be any colorable criticism of that point. And I say that for a couple reasons. One, if you look at DOL's own regulation, 541.202B, that's on page 4A of our blue brief in the appendix, it says one of the factors you look at in deciding whether employees exercise independence and judgment with respect to matters of significance is, are they conducting investigation and resolving matters of significance on behalf of management. That is exactly what the GEICO fraud investigators are doing. They're resolving the indicators of fraud and, therefore, are resolving significant matters on behalf of management. And that really follows from the undisputed record that fraud is the driving problem with respect to claims in the insurance industry and with respect to GEICO. It's a huge, it impacts the bottom line perhaps more than any other aspect of the insurance process. And so it has huge financial. You're saying that, say that again, that fraud is the, is what? Fraud is one of the driving concerns in terms of the sort of loss prevention that insurance companies are doing. Oh, the loss prevention. Right. And it's, and not only is it a matter of the bottom line, it's a significant driver of the bottom line. Our brief cites some of the statistics and the billions of dollars that go towards potentially fraudulent claims. But it also has legal consequences. That is 43 states. If you have a potentially fraudulent claim, does that trigger a denial of coverage? It can in certain instances, Your Honor. And the GEICO fraud investigators have discretion to refer, if they find a claim to be fraudulent, they can refer it to GEICO underwriting. And then GEICO underwriting could cancel the coverage. You say finding it to be fraudulent or finding it to be, there be indications of fraud. Yes, Your Honor. Exactly. Which one? Well, they, if you look at the reports, they do both. They say, look, there are no fraud indicators here, so we don't find the claim fraudulent. Or they'll say there are fraud indicators here, so we find this to be a staged accident. So in that latter circumstance where they find fraud indicators and they find the claim to be that it's a staged accident, for example, they then have the discretion to refer it to either law enforcement or to GEICO underwriting or to both in those circumstances. And what I was saying, 43 states actually require the insurance companies to have these sort of processes in place to report fraudulent claims to whatever the state regulator is in that state. 23 states. What's the most common indicator of fraud where there's been some indication of arson and burning down the house or the store or something? My understanding is one common example are staged accident rings, where, for example— Automobile accidents? Yes, exactly, where they may be in concert with a medical provider who then, they have these rings where they organize staged accidents. Well, you've got a big conspiracy there. Yes, Your Honor. And so these are the sorts of things that the fraud investigators are tasked with ferreting out. So you refer that to the U.S. Attorney or something? Yes, Your Honor. And the GEICO fraud investigators have unilateral discretion. No supervisor reviews it, nothing, for them to then refer one of these claims to law enforcement. And there are examples among the—and we cite it in the brief—of hundreds of these that plaintiffs have done, referred them to law enforcement based upon their resolution that there are indicators of fraud present. So your investigators are retired law enforcement personnel? Your Honor, about half are retired law enforcement, and the other half are, in fact, lower-rated claims adjusters. So they've made the transition from claims adjusting to a fraud investigator. So the suggestion that claims adjusters— Have they worked their way up or worked their way down? I think worked their way up, Your Honor. Those are lower-rated positions, and so the suggestion that, for some of these employees, so the suggestion that, well, claims adjusters provide this very important function and matters of significance, but the fraud investigators don't, I don't think, holds up. Claims adjusters decide whether to deny the claim or not? Yes, Your Honor. The claim— That sounds like that's the boss man. Well, Your Honor, it is undoubtedly true. They make the ultimate decision whether to deny a claim, just like for the fraud investigators in Foster. They referred it up to the claims adjuster to make the final call. But there can be no question that that final call is heavily informed. When you receive a report that says, this was a cause-stage fraudulent accident ring and we found indicators of fraud present, that heavily, heavily informs the decision. Could you spend a minute addressing the second prong of the test? Sure, Your Honor. Because as I review the cases, that test looks to sort of the infrastructure of a business—tax, accounting, all of that stuff. That's not what's going on here. Sure, Your Honor. So a couple points about the second prong, which is the general business operations. Are they supporting the general business operations of the business? First of all, if you look at the regulation, I agree with you. There isn't a category that neatly says fraud investigation is a functional area. But here are some of the functional areas. And the regulation says these include these functional areas and, quote, similar activities. Here's the ones that I think they're most similar to. Auditing, quality control, loss prevention, and legal and regulatory compliance. And let me talk a little bit about why I think those are similar. So if you look at auditing and quality control, which fall within, as the DOL has interpreted, kind of the loss prevention rubric, that's exactly sort of what the function that these fraud investigators are doing. They're servicing the— To me, there's quite a distance between auditing, on the one hand, and loss prevention, on the other hand. Well, Your Honor, the DOL disagrees with you. The DOL has an— I don't think so. Well, they have an— Or interpretation of the DOL. Well, the opinion letter that we've cited in our brief actually says loss prevention is a covered functional area in this regulation. And so the DOL has interpreted it to cover loss prevention. But if you— I wasn't suggesting that loss prevention wasn't in there. Oh, I see. I was suggesting that you're trying to tie together fraud and loss prevention. Sure. And if you think that's a bridge too far to—if that's a gulf too far to bridge, then regulatory and legal compliance. As I mentioned before, 43 states require insurance companies to set up these sort of fraud investigators to refer claims to them. 23 states require them to have a loss prevention program that involves this sort of system that GEICO has set up. So we think it's definitely furthering the legal and regulatory compliance function there. But states also require employers to post all kinds of workers' compensation notices in the workplace and that kind of thing. Well, Your Honor, I think we think this is a little bit— Because there's a lot that the states require. Sure. But we think that this goes to really to the heart of the regulatory and compliance program that states are requiring from insurance companies. The other thing I'll say about this is the DOL regulations make clear on this second prong, the business operations prong, that claims adjusters, that claims adjusting function is covered. They have an express carve-out for that, right? I'm not claiming that we do everything that claims adjusters do. But if claims— So the question here is, on prong two, are your investigators similar enough to claims adjusters that we ought to say close enough? Or are the distinctions between what they do, what they're assigned to do, what they're assigned to do, an arguably erroneous conclusion that they should be treated the same? Your Honor, I think that's right, but I would put a little bit of a gloss on it in this way. That is, the traditional test that this circuit and other circuits have recognized in terms of that second prong is this dichotomy between administrative work and production work. And the argument principally in these cases, when you look at them, oh, are they more similar to production employees or are they more similar to administrative employees? Every case that's been decided on this issue, even the cases that ultimately go their way on matters of significance, like the district court decision in Ali, the district court decision in this case, and then, of course, the other decisions go our way in Foster, district court and court of appeals, every single one of those has said that fraud investigators satisfy the second prong. This would be the first court if it said that it didn't satisfy the second prong. And here's the reason why they all give for doing that, is when you look at the administrative and production dichotomy, it doesn't give you a perfect answer, are these production or administrative employees, but when you put the overlay of the DOL regulation that says claims adjusters are covered, general business operations, there's no dispute that the fraud investigators work hand in hand with the claims adjustment function. And if claims adjusters fall on the administrative side of the line because insurance companies aren't in the business of producing claims adjustment, they're in the business of producing insurance policies, that's the rationale. If claims adjusters fall on the administrative side of the line, then there isn't any argument that fraud investigators that work intimately, hand in hand in that claims adjusting function should fall on the other side of the line. Why doesn't the regulation take care of that for you, simply by including fraud investigators? Well, Your Honor, the regulation is silent one way or the other, so I don't think you can read into that silence. And, you know, I think maybe one reason why... It was that obvious. Well, one reason, one is maybe if it's that obvious, they felt they didn't need to spell it out. But more to the point, I think there are variations in the way, and you'll hear my colleague on the other side cite other cases with other sorts of investigators, there's sometimes differences in the way investigators do it, and DOL may not have wanted to sweep with a broad brush. But when you have a case like this... I don't want you to eat up your rebuttal. Sure. If there are no further questions... You've got some time. Thank you, Your Honor. Mr. Morgan? May it please the Court, Counsel, I was planning to start with prong three of the administrative exemption test that focuses on discretion and independent judgment with regard to matters of significance. But I think, Your Honor, touched on an important point, one that we preserved on appeal because we think it's important, which is whether these investigators serve... Whether their primary duty of conducting investigations includes servicing the general business operations or management of the company. We don't believe so. The regulation that is the relevant one is 541.202. And in Section... Or excuse me, 201. And in Section B of that regulation, it describes the functional work areas that is management and general business operations. There's nothing. No functional work area in which the special investigators fit. They just don't. And this circuit has obligated the employers to prove by clear and convincing evidence that the employers... The primary job duties of an employee fits within the exemption. Actually, it's a little bit stronger than that, isn't it? It's plainly and unmistakably. That's right, Your Honor. That's right. And to the extent... I would submit to this Court, to the extent that there's an open question on whether the primary job duty of these folks conducting investigation... Not resolving fraud indicators, and I'll touch on that in a minute. But conducting investigations fits within the regulation. If it is a close call, if it is 50-50, if it is 5149, this Court must affirm Judge Titus's ruling at least as to prong three and decide as a matter of law that the investigators are non-exempt employees under the administrative exemption. And so we believe, and my colleagues write, there were cases in the nationwide case, which Ohio and the Sixth Circuit found that the investigators fit within the second prong of the administrative exemption test. In Ali v. Veracity, another case of mine, Judge Montgomery did too. Judge Thunheim in the Fenton v. Farmer's case didn't go there. He looked specifically... My best recollection, he looked specifically at the discretion and judgment prong of the test and decided that the farmer's investigators didn't meet the primary duty of exercising discretion and independent judgment with respect to matters of significance. So I think you're right. I think your question speaks to an important point, and one I've continued to raise in front of the courts in this country, which is these investigators do not satisfy the second prong of the test. They do not service the general business operations and management. If the court just looks at the regulation, it's talking about those types of jobs that transcend industry, those types of jobs that an organization presumably needs to function, like the lawyers and the accountants and the marketing folks and the auditors and the business leaders per se, not the investigators who are conducting fraud investigations out in the field. It's just something totally different. With regard to the discretion and judgment prong, prong three, it is essential before any analysis is done to determine what the primary duty of the job is. The primary duty of the GEICO investigators, not the nationwide investigators, the GEICO investigators is to conduct investigations. Judge Titus found that the investigator's primary duty is to find facts that allow claims adjusters to determine whether enough suspicion remains to warrant denial of a claim. That's JA102. Find facts. Mike College, who was the operations and training manager from 2003 to 2011, I took his deposition in this case. He's the one that trains these folks how to do their jobs. He describes investigations as assisting adjusters in uncovering the facts of claims and how claims were reported to GEICO. These folks are fact finders. That is their primary duty. That is their main or most important duty. That is how primary duty is defined under the regulations in the FLSA. And so it's with that definition of what it means to investigate that we have to decide whether that fits within the regulation. And it comes nowhere close. I take it, by the way, there is no question on either side here that all of these questions are questions of law. The application of the primary job duty to the regulation is absolutely a question of law. If there are... Nobody suggests that summary judgment one way or the other was inappropriate. No, both sides move. I think GEICO's alternative argument is at the very least there's a fact question on what the primary duty is. And so if the court doesn't find in its favor, it should be submitted back to district court for a trial. I don't think that's the case here. I don't think there are any disputes. We're trying to describe what we think it is. And what GEICO is trying to do is they understand that the farmer's case exists. They've read the Department of Labor opinion letter from 2005 that says all of the tasks, that we assume are investigative tasks in the colloquial sense, are non-exempt job functions. The investigators from 2005 were investigating individuals who were seeking national security clearance. And they were found that they didn't exercise discretion in independent judgment with regard to matters of significance. If we're talking about fraud and how big of a problem fraud is in the industry, that is the improper focus. If that was the right focus, the Department of Labor would have said, these investigators are clearly exercising discretion in judgment with regard to matter of significance. What's more significant than our national security? So it can't mean that because the subject matter on which the investigators are working is fraud, that that therefore means it's a matter of significance. It's not. It looks at what they are capable of doing within the context of their job. And GEICO has set up this structure that is very formulaic in the way investigations are run. A referral is received. The investigator connects with the claims adjuster. They figure out a plan of action. The investigator goes out and performs the investigative tasks, interviewing witnesses, assessing credibility. Now you're talking about prong three. I am talking about prong three, Your Honor. It's the manner. And this is an important distinction as well. Prong three focuses on the manner in which the job is performed. Prong two focuses on the type of work and the relationship of that work to the employer. So I think, you know, the analysis is clearly different. And when we're talking about this- But you don't dispute, do you, that fraudulent insurance claims generally are matters of significance to an insurance company? They're significant to an insurance company, yes. There's no question about that. And I'll take this- And that is a matter of significance within the context of this case. Not in the context of the regulation, Your Honor. Because- Tell me why. And I would tell you, I only say that, well, I say that in large part because of this 2005 Department of Labor opinion letter. I mean, if the underlying subject matter of the investigation was the justification for whether the discretion and judgment is with regard to a matter of significance, then surely those investigators who were investigating people who were trying to get national security clearance would be exempt. I don't think there's any question that investigating something like national security clearance and whether a person should obtain it or not is a significant matter. But what the Department of Labor said is we have to focus on the manner in which the work  And here's- the discretion and judgment. It's all one and the same. No, see? It's not. Well- That's exactly the point. It is not one and the same. Your Honor, if- It has to be the exercise of discretion and judgment, comma, on a matter of significance. Well, if at 541202B, the second sentence reads, factors to consider when determining whether an employee exercises discretion and judgment with matters of significance include, but are limited to, and then it goes through the laundry list, I'm not suggesting to this Court our clients don't exercise discretion in their jobs. They do. And I'm not suggesting that they don't work independently. They do. But they don't exercise discretion in independent judgment with regard to matters of significance. And I'm suggesting you're borrowing that from Prong 2. It seems to me you're importing into Prong 3 into the notion of what's significant, the notion of what the work is, what the general business of the employer is. If you think I'm doing that, then I'm not clear enough, Your Honor, because I'm not trying to do that at all. And I think, with regard to the manner, with regard to Prong 3- What's insignificant about fraud to an insurance company? It's not. It's significant, Your Honor. I'm not suggesting it's not significant. I'm just saying we have to look at each primary duty of the worker. Fraud is significant. But they're tasked with conducting investigations in this very formulaic way at GEICO. And their hands are tied with regard to what they can and can't do on their investigations. Judge King, you asked the question about whether they can decide fraud or whether they identify indicators of fraud. Your question was in the context of referrals to law enforcement, not the adjusters. You see, at GEICO, the adjusters don't get to read the notes, the day-to-day notes of the investigators. They don't get to rely on any of that. The only thing they get to rely on are the reports, the interim reports and the final reports that are reviewed and blessed by management and sent back, if it's not within the GEICO confines, before it gets published to the adjuster. And the training materials, and indeed my college, the training person said investigators are trained not to provide opinions. There is a PowerPoint slide that's in the record, it's referenced to in the record, that distinguishes between what a fact is and what an opinion is. And that's critical here because in the regulation that, Judge Davis, you were talking with my colleague about regarding the claims adjusters, how they're expressly noted as administratively exempt. There's a laundry list of the duties that are included that justify the department labor's view that claims adjusters are exempt employees. And it includes things like preparing damage estimates, evaluating and making recommendations regarding coverage of claims, determining liability and total value of a claim, negotiating settlements and making recommendations regarding litigation. The investigators at GEICO do none of that and it's undisputed. Their primary duty does not include any of these tasks. Their primary duty includes uncovering the facts of a claim, reporting such information objectively as GEICO trains it to the adjuster who makes, frankly, all of the important and relevant decisions on the claim. But you don't dispute this contention that your clients are free and at least in some instances, borne out by the record, expected to make law enforcement referrals based on their investigation? They do it. Without supervisory intervention? They do it. They say, GEICO says they may do it. I would argue. And many of them do, or some of them do. Some of them do, Your Honor. Some of them do. I would submit to this Court, however, that that is an ancillary or secondary job task. That is not the main job duty of the investigator. The main job duty of the investigator is to bear out and uncover the facts of claims that are referred. If the facts develop in such a way that the investigator wants to take it upon himself or herself to make that referral, they can. The adjusters don't get any of that information and the adjusters and the final reporter are a referral to law enforcement has been made, period. But it has no bearing or impact whatsoever on what the adjuster does with the claim or not. It's secondary to the goal of the investigation, which is to uncover the facts, report those facts to the adjuster, so that the adjuster... I'm sorry. Are you suggesting that if one of your clients made a referral, that an adjuster would go ahead and settle the claim? No. No. Of course not. No, but what I'm... That would put... That would stop everything in its tracks. You know, Your Honor, we don't know the answer to that question. Well, common sense tells us the answer. Well, fair enough. But the salient question after that point is, it's the adjuster that decides it. The investigator doesn't decide, Geico, don't pay this claim, I've just referred it to law enforcement. The adjuster makes that decision and that's what we're talking about with regard to discretion and judgment, with regard to matters of significance. The investigators come up with the information and turn it over to someone else to make the salient decisions, and that's the point, Your Honor. I want to touch on, just very briefly, the case law. The Fenton case versus Farmers is a district court case. It's out of the circuit. I think it is the most relevant case, and I say that only because, like Geico, Farmers had a policy formally prohibiting investigators from offering the opinions on what to do with the claims. And you're not hearing Geico tell you any different. And Judge Thunheim in the District of Minnesota found that persuasive, found that there was a business decision made, just like in this case, to draw a line between the adjusters and the investigators. And Geico is free to make those business decisions, but those decisions have consequences, and one of them is whether the investigators, the people on the other side of the line, are properly classified as exempt. We don't believe so. It's their business decision to not open up and make public to the adjuster all the day-to-day notes of the investigator during the investigations. All the adjusters see are these reports, these interim and final reports that are approved by the supervisors. They use that information to make decisions. Again, they can make that decision, but there are consequences to it when we're talking about discretion and judgment with regard to matters of significance. Unless there are any questions on either prongs two or three, I want to comment just very briefly on two of the challenges issues that we preserve for appeal in this case. Yes, Your Honor. And I want to focus in particular on two of the issues. The first one is the willfulness issue. Under the FLSA, if the employer is found to have acted in bad faith with regard to compliance decisions, the statute of limitations can extend from two years to three years. We noted in our brief, after I looked at the case law, nearly every case that this Court has looked at, including, I believe, Desmond II, where the decision of willfulness was decided by summary judgment was remanded for a trial. And we think on this record, where Geico sought out the head of SIU to ask for his opinion, and his opinion was that the company should reclassify, and then they decide not to reclassify. And we have this decision from Judge Titus. We think, at the very least, if not bad faith, it's deliberate disregard for compliance, and that the plaintiffs, under the FLSA claim, deserve a chance to prove to a jury that it was willful conduct. The only other point I want to make on the damages is this liquidated damages and prejudgment interest concept. We know, and we're not arguing that the plaintiff gets both, liquidated damages or prejudgment interest. But we think the Klein case from 1982, but it's still good law, and it's in the ADEA context, but it looks to the FLSA to determine the remedies, says that prejudgment interest is necessary in the absence of liquidated damages to make the individual whole. So if the court decides that liquidated damages isn't appropriate, although we preserved our right on that issue as well, then at the very least, prejudgment interest should be assessed on the award in this case. We started this case in 2010. We reviewed that for abuse of discretion, right? Prejudgment interest on abuse of discretion, yes, Your Honor. The willfulness review is de novo. So unless there's any other questions, I think I reserved a couple of minutes to speak after my colleague. Okay. Thank you. Thank you, Your Honor. Mr. Shaw. Thank you, Your Honor. What we still haven't heard today, anywhere in the other side's briefing, in the hundreds of pages of briefing, or the argument today, is a distinction between the fraud investigators at GEICO, and the fraud investigators at Nationwide, and the Sixth Circuit's decision in Foster. They do not criticize, at all, anywhere, the Sixth Circuit's determination that when fraud investigators are actually resolving fraud indicators, they are exercising independent judgment with respect to matters of significance. And if I can be practical. You make it sound like we're bound by Foster. Your Honor, you're not bound by Foster, but I think the logic of Foster is unassailable on that point. That is, when you have the fraud investigators actually resolving the fraud indicators, that is the matter of significance to the insurance industry. They are resolving it. And to the point, they don't take issue with Foster's logic on that, or holding on that. They simply try to distinguish it. But the point is, there is no distinction on every ground. The referrals are received by the Nationwide investigators and the GEICO investigators from the Claims Department. They devise plans of action in both cases. They are supervised by a fraud investigator, supervised in both cases, and audited in both cases. In both cases, they are not permitted to give unsubstantiated opinions. They made this exact same argument in Foster. It's on page 648, where it says, plaintiffs emphasize that Nationwide's policy documents provide that only factual information and not opinions in claim logs can be made by the fraud investigators. They make that identical assertion here. True. I concede, GEICO investigators cannot make unsubstantiated opinions, just like the ones in Nationwide couldn't. But that doesn't preclude them from making substantiated recommendations, conclusions, whatever you want to call them, in report after report, uncontroverted evidence in the record. They have never said that those reports from their own plaintiffs are illegitimate, or are outliers, or are not representative. Nor could they. Hundreds of reports, fraud indicators present, fraud indicators not present. These are all cited in our brief, 1415, 1617 in our brief. The other point they make is, ah, but they don't make the final claim payment decision, the claim denial decision, exactly true in Foster, where the Sixth Circuit held. There is no dispute that the fraud investigators do not make the ultimate claim denial decision. But that doesn't change the fact that they're still resolving fraud indicators, which is a critical piece of the claim adjuster's ultimate decision, whether to pay or deny a claim. I think when you look at the two cases, they're indistinguishable. They have not pointed to a single piece of record evidence that would put any genuine dispute in terms of their job duties. There's no dispute of fact on that, no colorable dispute. As the Circuit has said time and again, you can't create a dispute simply by saying, no, they don't resolve indicators of fraud. You have to point to some evidence that supports it. They can't contradict the uncontroverted evidence of report after report. The only thing I'll say, unless there are other questions, is about damages on the willfulness and prong on damages. If you get there, obviously we don't think you should get there. You should just resolve this question of law on this undisputed record to avoid a Circuit conflict with Foster and in our favor and grant Geico summary judgment. But if, for any reason, you reach that issue, it's not a close call on willfulness, Your Honor. The determination as to whether these employees should be designated as exempt or not exempt was through a carefully vetted process. There is no dispute that the decision made by one of the Geico employees was based on a district court decision that has since been overturned and, in fact, the Geico decision makers predicted that it would be overturned and on that basis made these employees exempt. They were correct in their prediction. It was overturned. And then on top of that, you have the Sixth Circuit, the only court of appeals that's weighed in on the precise issue of fraud investigators. That was a claims adjuster case that was overturned. On fraud, investigators goes their way. Not only is it not willfully flouting the law, it's not even an unreasonable judgment under the law. So it's nowhere near close and so the district court was correct to grant summary judgment for Geico on all of those remedial issues. If there are no further questions, Your Honor. Thank you. Thank you, Your Honor. Mr. Morgan, you have a few minutes remaining. Thank you, Your Honor. So we're clear. The Sixth Circuit did not decide the question of whether investigators are administratively exempt for the industry. They certainly didn't answer that question for this Court. The Sixth Circuit affirmed Judge Sargis after a seven-day trial when the primary duty was in dispute and the application of that duty to the regulations was in dispute. He carefully and thoughtfully made a decision that was affirmed by the court of appeals. We happen to disagree with it, but it is not the exact same thing. This record is much more like Farmer's and Ali, both of which were decided on summary judgment that formally prohibited the investigators to not offer opinions. The question comes down to primary duty. If we want to talk about foster, the Sixth Circuit defined the primary duty as conducting investigations with the goal of resolving fraud indicators. That means that includes the determination of the legitimacy of a claim or not. The determination of the legitimacy of a claim or not. We don't have that here. We heard again, plaintiffs haven't cited to a single shred of evidence. Mike College is the operations and training manager from 2003 to 2011, and I asked him what investigations mean, and he says, assisting adjusters in uncovering the facts of claims and how claims are reported. Uncovering the facts. That we know from the Department of Labor opinion letter from 2005 all the way back to 97, along with the other district court cases that followed those opinions, we know that that's not discretion and independent judgment with regard to matters of significance. On the question of willfulness, my only response is Desmond II was a case where there was a typographical error in the job description that said it was non-exempt and the company classified him as exempt. That question was allowed to be tried to a jury. I think these facts warrant a jury trial. Thank you.
judges: William B. Traxler, Jr., Robert B. King, Andre M. Davis